UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 18-18-02 (DWF/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **GOVERNMENT'S POSITION ON DEFENDANT'S SENTENCE** |
| v. | |
| AMOS KIPROP KOECH, | |
| Defendant. | |

The United States of America, by and through its undersigned counsel, hereby submits its Position on Defendant's Sentence in this case.  Amos Kiprop Koech was convicted after trial of sex trafficking of a minor and conspiracy to commit sex trafficking of a minor.  The defendant paid for commercial sex acts with the minor—C.D.—knowing she was very young.  In an attempt to protect himself, the defendant also took a degrading video of the minor without her consent.  As a result of an absolute disregard for the victim and the rule of law, the United States asks this Court to sentence defendant Amos Kiprop Koech to a within-the-guidelines range sentence for the crimes of sex trafficking and conspiracy to commit sex trafficking of a minor.

## BACKGROUND FACTS

The following facts were set forth in the Presentence Report (PSR) and were established at trial.  From on or about June 17 through July 7, 2017, in Duluth, Minnesota, the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, and solicited a minor victim, C.D., to engage in commercial sex,

knowing that C.D. had not attained the age of 18 years. In fact, Koech knew that C.D. was well under 18 years old. He commented early on to law enforcement that he knew to subtract two years from the stated age. And Koech himself told C.D. that she was "too beautiful" to be 18. C.D.'s age was a fact Koech seemingly cared little about until first encountered by law enforcement. What did he do? He attempted to quickly delete what he believed to be child pornography of C.D. from his cell phone. PSR ¶ 13. Fortunately, that video was later recovered during a forensic review as a series of photographs. *Id.*; Gov't Exs. 31A&B–45A&B.

As proven at trial, as part of the sex trafficking conspiracy involving Koech and Mathis, Mathis first met up with C.D. and M.F. after they had run away from the Sol House, a residential home for exploited youth. C.D. and M.F. were brought to an apartment in Duluth where Mathis was staying. These, Mathis provided them street drugs and alcohol and had sex with C.D. that first night.

Mathis then told C.D. about how she could engage in sex in exchange for money—having in mind someone with a steady job and income like Koech as the sex buyer. During the time Mathis was trafficking C.D., he used physical violence against C.D. As the Court saw and heard at trial, this included use of a taser that caused C.D. to become not only incontinent but humiliated and a far more compliant victim.

Mathis took sexually suggestive photographs of C.D., which he used to text or otherwise send through facebook to prospective commercial sex buyers. This included people like Brian Garnes who testified at trial and who realized through text

communication that Mathis was not joking. Visible in the photographs was a mark on C.D. from having been struck.

Mathis taught C.D. the commercial sex acts she would have to perform for commercial sex buyers like Koech. This included oral, anal, and vaginal intercourse. As testified to at length at trial, during the course of time Mathis trafficked C.D., he sold her to co-defendant Koech on at least one but likely more occasions given C.D.'s testimony and the phone and text messages between Koech and Mathis. Mathis negotiated with Koech between June 20 and July 4, 2017. In the correspondence, Mathis texted: "What you got to spend[?]" Koech asked: "Why?" Mathis responded: "For my hoe." Koech then replied: "I can come up with 50." Mathis responded: "$60 and I got you." The jury rejected Koech's claim that his text communication dealt with a barter or trade for Mathis's speaker. Moreover, the defendant's communication is sad commentary on the value of a teenage girl.

At trial, C.D. compellingly testified about the degrading experiences with the defendant, including the sexually-suggestive photographs that Koech had taken of her without her consent and the need to shower after a sex act to attempt to feel clean. As this Court saw and heard firsthand, C.D. survived a horrific several-week period in Duluth.

The trafficking finally ended when law enforcement found C.D. hidden in a bedroom closet while Mathis was also present in the apartment. Fortunately, an alert officer connected C.D.'s story with a missing person's report that had been recently made by C.D.'s mother who indicated concern that C.D. was being held against her will. C.D. hid there at Mathis's direction. During the time Mathis trafficked C.D., he monitored

C.D.'s communication with her parents and instructed her to tell them that everything was fine. As C.D.'s mother read at trial, C.D.'s text messages to her were increasingly haunting:

> I will try to email you as much as I can. I hope I can see you in the near future.
>
> Mom u don't know what im doing my life is confusing but I can[']t leave here . . . . But im not supposed to talk to you all the time he told me to just tell u I was ok.
>
> Mom I cannot leave I owe him money bc he bought me $100 shoes, hair dye, brand new clothes, and food[.] He gets mad when I do things wrong.
>
> It[']s not like that mom[.] I'm his investment.

PSR ¶ 10; Gov't Tr. Ex. 13. This criminal case resulted from the bravery of C.D. and the resolve of law enforcement to hold Mathis and Koech accountable. On March 7, 2018, Koech was arrested on the federal warrant at his duplex in Duluth and has been in custody since that time. PSR ¶ 15.

## SENTENCING CALCULATION

The defendant went to trial and was convicted of both counts. Sex trafficking of a minor carries a statutory penalty of at least 10 years in prison and up to lifetime incarceration. PSR F.1. As this Court knows, the government was willing to hold open its offer to one count of conspiracy to commit sex trafficking of a minor with the government agreeing to dismiss the sex trafficking of a minor count, which carries a 10-year mandatory minimum. This also included an offer of a global resolution with St. Louis County to its

third-degree criminal sexual conduct charge involving a separate victim with time to be served concurrently. The defendant rejected the offer.

For the defendant's federal crimes of sex trafficking a minor and the conspiracy to do so, the base offense level is 30. PSR ¶ 25. There is a 2-level enhancement because the offense involved the commission of a sex act or sexual conduct with C.D. PSR ¶ 27. This included sex acts by both Mathis and Koech. The defendant went to trial and is not eligible for a three-level reduction for acceptance of responsibility. PSR ¶ 33.

With an adjusted offense level of 32 and a criminal history score of II, Koech's advisory guidelines range is 135 to 168 months' incarceration. PSR ¶ 82. The period of supervised release is 5 years to life. PSR ¶ 84.

## SECTION 3553(a) SENTENCING FACTORS

In addition to determining defendant's sentencing guidelines range, 18 U.S.C. § 3553(a)(4), this Court is required to assess the other applicable sentencing factors under Section 3553(a). Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

In this case, considering all the sentencing factors, the government respectfully submits that a guidelines sentence is appropriate for Amos Kiprop Koech.

First, Koech committed a serious offense deserving of an appropriately serious punishment. The instant offense involved a conspiracy to prey upon the vulnerabilities of a teenage girl—to induce her to engage in commercial sex acts—for Koech's benefit and Mathis's profit. In the conspiracy, Mathis took advantage of the naiveté, mental health history, substance abuse history, and other vulnerabilities to traffic and exploit C.D. Indifferent to these issues, Koech knowingly purchased C.D. for his benefit. The evidence at trial demonstrated two such occasions where Koech bought C.D. for sex. The first was the time that Koech was unable to perform penetrative sex, but he took a sexually-explicit video of C.D., which was later forensically recovered after he attempted to delete it. The second was the time when C.D. recalled a completed sex act and the need to shower—describing in detail Koech's bathroom and his red towels.[1] Of course, these two sex acts were corroborated by the extensive text and phone communication between Koech and co-defendant Mathis, which spanned over multiple weeks. The offense conduct alone—the

---

[1] The defendant disputes the facts as presented at trial and objects to their being two commercial sex acts. While the government believes the testimony from trial supports at least two occasions when C.D. was sold to Koech for commercial sex and objects to the reference to only one in the PSR, Add. A.1.–A.2., this Court is in the best position to assess the testimony. This Court can recall the evidence as presented at trial, principally from the victim C.D. along with other corroborating phone and text evidence. Regardless of whether there was just one—which is all that was needed for a conviction—or more than one, the guidelines are the same and the government would be requesting the same sentence. (In fact, Koech receives the benefit of the PSR not including a five-level pattern enhancement. While the government disagrees, *see* A.1., the Court need not resolve the issue.) The defendant should be sentenced within the guidelines range as calculated by the Probation Officer.

buying and selling of a child for sex—is deserving of the most significant punishment available to this Court.

Second, in addition to victimizing C.D., the defendant's own criminal history is one of disrespect for the rule of law. While the defendant is only in criminal history category II and this is by far his most serious offense, the defendant is not unfamiliar to law enforcement. A significant amount of Koech's criminal history includes driving under the influence, for which he was convicted in 2004, 2006, 2011, and 2017. PSR ¶¶ 40, 41, 46, 49. In fact, the defendant was on probation after a BAC of 0.259, which is more than three times the legal limit, when he committed the instant offense.

More troubling than the serious criminal driving offenses is Koech's disrespect for women. He has previous charges of stalking, harassment, and assault. Starting in 2000, the defendant was charged with and pled guilty to interference with privacy. PSR ¶ 39. There, the defendant was harassing victim S.B. Koech followed her home from a bar and knocked on her window. Then he continued to call her at work and at home and to stop at her apartment. The stalking charge was dismissed. *Id*. The defendant was also convicted of disorderly conduct in 2015 when, while intoxicated, Koech yelled at, shoved, punched, and pushed a neighbor down the stairs. PSR ¶ 48. After she fell, the defendant grabbed her foot and punched the victim in her face and ribs. *Id.*

The defendant has a pending case in St. Louis County of third-degree criminal sexual conduct. PSR ¶ 56. The allegations include that Koech entered the residence of CSD uninvited. He then asked to "take a peek" at the victim's breasts. When she refused, he blocked her attempt to exit, began to lick and kiss her neck, to fondle her breasts, and to

penetrate her vagina with his fingers while masturbating. After the assault, the victim underwent a physical examination and DNA swabbing. While the defendant denied being at CSD's residence, the DNA results exclude an estimated 95.7% of the general population. Victim CSD attended trial this January in Duluth in support of C.D. While the defendant argues that Paragraph 56 of the PSR is an unsubstantiated allegation, the factual information should nonetheless remain contained therein. CSD is still awaiting justice in her case.

Despite only two criminal history points, the defendant's criminal history is serious. While not presented at trial, the government identified other text communication by Koech that appeared to be consistent with offers by Koech to buy sex. Given multiple cases that were dismissed and the fact that Koech committed the instant offense while on probation, Koech's criminal history may understate his true risk to the public.

Third, a guidelines sentence will avoid unwarranted sentencing disparities among defendants who have been found guilty of sex trafficking. There are few comparable sentences nationwide for commercial sex buyers similarly-situated to Koech. The majority appear to be from undercover sting operations. This case is different. Koech sought out commercial sex and was more than happy to do so with a minor. When Koech had an opportunity to observe C.D. in his bedroom, what did he do? Did he turn her away? Did he attempt to get her help? No. He attempted to have sex with her and to take a degrading video of her for his benefit. The undersigned is not aware of any case in this District or

elsewhere with the same charges and convictions against a repeat commercial sex buyer of a child. There appears to be no basis, however, to vary below a guidelines sentence.[2]

Fourth, this Court is to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The government has no objection to defendant's placement in a facility that would allow him the opportunity for appropriate correctional treatment. Following defendant's release from confinement, if not deported from the country, Koech must remain under supervised release for life. *See* U.S.S.G. § 5D1.2(b)(2).

Finally, restitution is not only appropriate but required in this case. 18 U.S.C. §§ 1593 & 3663A. PSR ¶¶ 19 – 20. At this point, the victim is seeking a modest amount of restitution—$458.35 for medical treatment—which was awarded by the Minnesota Crime Victims Compensation Board. The defendant should be required, along with co-defendant Mathis, to pay third-party restitution. *See, e.g., United States v. Schmidt*, 675 F.3d 1164, 1166, 1169 (8th Cir. 2012) (upholding an order of more than $64,000 to the state's Medicaid program to cover the cost of treating the victim and $193 to the state victim compensation program to cover a payment it made for the victim's clothing); *United States v. Andrews*, 600 FG.3d 1167 (9th Cir. 2010) (finding award of $59,000 to the Washington

---

[2] This is all the more true given that Koech had an opportunity to resolve the case before trial where the government represented that as part of an anticipated global resolution with CSD's case in St. Louis County, that the suggested sentence would be less than half of what he would be looking at after trial. Koech had multiple opportunities to resolve the case in a way that was both more favorable to him and that would have saved the victim and her family from trial. He chose trial. His eyes were open to the consequences.

Crime Victim's Compensation Program to cover the victim's medical bills and lost income was proper). C.D. wishes to address the Court at sentencing to speak to the impact of the offense on her. This Court will not soon forget the victim's bravery in testifying at trial. It is the undersigned's hope that with time and support, the victim will not be defined by this alone but will emerge as an empowered survivor of sexual exploitation. The sentencing of Koech will bring much needed closure.

## CONCLUSION

In this case, considering all the sentencing factors, the government respectfully requests that this Court impose on Amos Kiprop Koech a guidelines sentence—that is one between 135 and 168 months' imprisonment and a long period of supervised release. This is called for under the applicable statutes, advisory sentencing guidelines, and an assessment of the § 3553(a) factors. And it is just. Nothing less would accomplish federal sentencing goals.

Dated: July 8, 2019

Respectfully submitted,

ERICA H. MacDONALD
United States Attorney

*s/Laura M. Provinzino*
BY: LAURA M. PROVINZINO
Assistant United States Attorney
Attorney ID No. 0329691

JONATHAN HOLETS
Special Assistant United States Attorney
Attorney ID No. 0389414